Mr. Justice Cox
delivered the opinion of the court.
This is a bill filed for a sale and partition, &c.
In May, 1853, William G. and George W. Ewing, brothers, and co-partners, in Indiana, bought lot 22 and part of 20 in subdivision of square 327, in Washington, taking the conveyance in both their names, as tenants in common.
In June of the same year, George W. Ewing bought square 862 in his own name, but with partnership funds and for the benefit of the partnership.
*386 William died first, having made a will which was inoperative in the District of Columbia. George, his brother, inherited one-sixth of his intestate property here, and thus became entitled to seven-twelfths of the property owned jointly. George managed the common property, paying taxes and expenses on it until his death, in 1866.
George left a will, by which he devised certain property to his executors, as trustees to pay the income only to his children, who were his heirs-at-law, and then gave it over after their deaths. He also directed these executors, out of the personal estate, or sale of certain real estate situated in the States, to pay taxes on all the testator’s lands and all other necessary expenses of protecting any of the property of which he might die seized. The residue of his estate was given to his children. This will, for want of proper attestation, was inoperative in this District.
The present bill is filed by Mrs. Sturgis, one of the heirs of William G. Ewing, against the other heirs of William and those of George, to sell the Washington property for distribution of proceeds. In the seventh clause of the bill she asks that the share of each heir be paid, after the repayment to the estate of George W. Ewing of the taxes paid by it on the same.
Before the auditor a large claim was presented by Jesse Holliday, present trustee under the will of George W. Ewing, for reimbursement of taxes paid by George W. Ewing in his lifetime, and by his executors and trustees after his death. This was audited, and exceptions to the auditor’s report filed. The present appeal is from the decree sustaining or overruling those exceptions.
The only controversy before us is, what allowances for taxes should be made, and to whom. The first claim relates to taxes on William’s share of the property. The auditor distinguishes between the property in square 327, conveyed to both the brothers, and that in square 862, conveyed to George alone. As to the former, he holds that the legal title to a moiety descended to William’s heirs, and if George or his representatives paid the taxes on it, this, if not a *387 mere voluntary payment, giving no right of recovery at all, at least gave them no lien on the laud, but a mere right of action, to which the statute of limitations might be pleaded at law or in equity, and this defence, which is made on the part of William’s heirs, is sustained.
But as to square 862, of which the legal title was in George, he holds that George, being a trustee for his brother as to a moiety, the heirs of William cannot assert their equitable claim to it without reimbursing his estate for his proper outlays in protecting the trust property.
Holliday, the present trustee of George’s estate, excepted to the auditor’s ruling in respect to square 327, but the court overruled his exception. As inequitable as the defence of limitations seems to be in such a case, we do not see how it can be avoided, and must hold the exception to be properly overruled.
The claim for taxes paid upon William G. Ewing’s share of square 862 divides itself into several parts.
The first is for taxes paid by George W. Ewing in his lifetime. This was allowed by the auditor. It was excepted to on the ground that it was included in a settlement of partnership affairs made between George W. Ewing and the administrators of William, with the will annexed, in 1866. The court sustained this exception to the auditor’s report.
We think the court erred in this respect, and that the evidence does not show this item to have been included in the settlement, but that, on the contrary, it was excluded, because the will not operating as to Washington property, the administrators with the will annexed did not feel authorized to allow it against the testate property which alone they represented.
As to the rest of the claim, i. e., for taxes paid by the executors and trustees, exceptions were filed by William’s heirs, on several grounds, viz.: one, that Holliday, as to this claim, is not properly before the court ; another, that the claim is barred by the statute of limitations ; and, thirdly, that if it is to be allowed to any one, it should be to the heirs of George, and not to the trustees appointed under his will.
*388 The court rightly, as we think, overruled or ignored the first two points ; it, however, sustained the third, and in this last ruling we think there was error. It has been already seen that the trustees under the will of George had a different interest from that of his heirs. They hold in trust, it is true, to pa}r the income to the heirs during their lives, but as to the principal of the estate, for other parties. Their property was a different fund from both the residue devised to the heirs and the intestate property descended to them. The taxes paid on the Washington property was not paid by the heirs, but from the trust fund now represented by Holliday. If they are repaid, they ought to go back to the same fund. That fund ultimately is for the benefit of parties not the immediate heirs, and any reduction of the fund on which a claim could be founded, can only be repaired by restoring the money paid to the same fund.
The legal title descended to the heirs, and if they had paid the taxes, they, as trustees, would have been entitled to reimbursement. But the person from whom it descended provided in his will, as we shall further see, for payment of those taxes out of another portion of his estate, and to that portion we think they should be restored.
The next part of Holliday’s claim relates to taxes paid on George W. Ewing’s interest in the Washington property
First, as to taxes paid by George in his lifetime. ' There is not the slightest foundation for this claim. It is equivalent to demanding from a man’s heirs taxes paid by their ancestor on descended property, for the benefit of executors, as if a man had a money claim on his own real estate for his outlays on it, which passed to his executors. The payment of taxes, of course, simply extinguished them as an encumbrance, and the property descended free from them.
As to the taxes paid by the executors and trustees, the will made it their duty to pay these taxes on all property of which the testator might die seized. As to that which was not included in the trust, but in the residue devised to his heirs, this direction was clearly for the benefit of his heirs. The testator may have supposed that his will was in force in *389 the District of Columbia, and that the property here passed under the residuary clause. The failure of the will in this respect makes no difference. The pi’operty descends just as .the testator probably supposed that he had devised it, and this direction in the will, as applied to this property, only carries out his general design. It was the duty of the trustees to pay off these taxes, not to assume them as a lien on the property to be reimbursed to them out of it, and Holliday has no claim for these taxes. His exception to the auditor’s report in this respect was rightfully overruled. So, we think, were his fifth- and sixth exceptions.
The ease is remanded for corrections in the account in conformity with this opinion.